## IN THE MATTER OF JAMES ROMAINE *et al.*

SEC. 2 of Art. 4 of the Constitution of the United States is a solemn compact between the States, to be enforced by State legislation, or by judicial action; and being a part of the supreme law of the land, it is a part of the law of each State; and State officers whose duty it is to adjudicate, or execute the laws, are governed by it, and State Courts of general original jurisdiction, exercising the usual powers of Common Law Courts, are fully competent to hear and determine all matters, and to issue all necessary writs for the arrest and transfer of fugitive criminals to the authorized agent of the State from which they fled, without any special legislation.

The Governor of this State has a right to issue a warrant for the arrest of persons found in this State, who have committed a crime in a Territory of the United States, and fled therefrom to this State, and to deliver such persons up to the agent of the Territory from which they fled, upon a proper application being made to him therefor.

The warrant of the Governor, in such case, should clearly state, that the person is charged in some Territory of the United States with treason, felony, or other crime; that he has fled from justice, and is found in this State, and that the executive authority of the Territory from which he fled, has demanded his delivery, to be removed to the Territory having jurisdiction of the crime.

THIS was an application to be discharged from arrest on *habeas corpus*.

On the second day of November, 1863, Hill Beachy and Thomas Farrell presented to the Governor of California the following requisition, and affidavit annexed, and demanded a warrant for the arrest of the petitioners:

38

In Matter of Romaine.

EXECUTIVE OFFICE, LEWISTON, IDAHO TERRITORY,
        United States of America, A.D., 1863.

*To his Excellency the Governor of British Columbia, or of the State of California :*

Be it known, that on this twenty-third day of October, A.D., 1863, personally appeared before me, W. H. Wickersham, who presented to me an affidavit by him made, which is in due form of law, and which declares that a murder and highway robbery has been committed in this Territory ; and Wm. Johnson, G. Clark, D. Smith, and F. Perkins, committed the same ; and that they, the aforesaid Wm. Johnson, G. Clark, D. Smith, and F. Perkins, have fled from this Territory to British Columbia, or to the State of California ; therefore, I request that the said fugitives be delivered up to Hill Beachy and Thomas Farrell, citizens of the United States and of Idaho Territory, whom I hereby appoint and constitute the proper authorities to receive the aforesaid fugitives, under the treaty between the United States and Great Britain, bearing date of August the ninth, 1842, so that the aforesaid fugitives may be tried in this Territory, in accordance with the laws of this Territory and of the United States.                WM. B. DANIELS, .

Acting Governor of Idaho Territory, in the U. S. of America.

In witness whereof, I have hereunto set my hand and affixed the seal of Idaho Territory, at Lewiston, this twenty-third day of October, A.D., 1863, and of Independence of the United States the eighty-eighth.                WM. B. DANIELS, ..

                Secretary of Idaho Territory.

———

TERRITORY OF IDAHO,
        County of Nez Perce.

On this day personally appeared before me, W. H. Wickersham, who being duly sworn according to law, deposes and says, that Wm. Johnson, G. Clark, D. Smith, and F. Perkins, did, on or about the fifth day of October, A.D., 1863, wickedly and maliciously with malice aforethought, waylay, rob, and murder, one Lloyd Magruder

and Charles Allen, citizens of the United States, on the trail, or road, leading from Virginia City to Lewiston, in said Territory, contrary to the laws made and provided, and against the peace and dignity of this Territory; and I therefore pray that a requisition issue to the Governor of British Columbia, or of the State of California, whither said parties are presumed to have fled; that the said Governor of British Columbia, or of the State of California, may order them to be delivered up for trial according to the laws of the United States, and of this Territory.

W. H. WICKERSHAM.

Subscribed and sworn to before me, this twenty-third day of October, A.D., 1863; and I hereby certify that the above-named W. H. Wickersham is a credible witness, and that he is worthy of belief; and I also certify, that as yet, the Supreme nor District Court of this Territory have not been organized, and that as yet no seal has been adopted for said Court.

ALLECK C. SMITH,<br>Associate Justice Supreme Court, I. T.

I, William B. Daniels, hereby certify that the above-named Alleck C. Smith, is duly appointed and qualified as an Associate Justice of the Supreme Court of Idaho Territory; and that as such, full faith and credit should be given to all his official acts; and that the above affidavit is in due form of law, and that full faith and credit should be given to the same.

In witness whereof, I have hereunto set my hand and affixed the seal of the Territory of Idaho, at Lewiston, this twenty-third day of October, A.D., 1863.

WM. B. DANIELS,<br>Secretary of Idaho Territory, U. S. A.

The Governor, on the demand, and the foregoing papers, issued his warrant for the arrest of the petitioners, of which the following is a copy:

In Matter of Romaine.

STATE OF CALIFORNIA, EXECUTIVE DEPARTMENT, }
    Sacramento, Nov. 2d, 1863.           }

*The People of the State of California to any Sheriff, Constable, Marshal, or Police officer, in this State:*

Whereas, a requisition has been made upon me, as the Governor of the State of California, for the arrest and delivery to the proper person, of William Johnson, G. Clark, D. Smith, and F. Perkins, charged with the crime of murder and highway robbery, in the Territory of Idaho; and said requisition being issued in proper form, by William B. Daniels, acting Governor of the Territory aforesaid, you are therefore commanded, forthwith, to arrest the above-mentioned Wm. Johnson, G. Clark, D. Smith, and F. Perkins, and deliver them into the custody of Hill Beachy and Thomas Farrell, who have been appointed agents of the Territory of Idaho, to receive the said fugitives from justice, and to convey them to the said Territory of Idaho for trial.

In witness whereof I have hereunto set my hand and caused the great seal of State to be affixed, at my office, in Sacramento, California, this second day of November, in the year of our Lord, one thousand eight hundred and sixty-three.

LELAND STANFORD,<br>
Governor of California.

A. H. H. Tuttle, Sec'y of State.

The foregoing warrant was placed in the hands of J. W. Lees, Captain of Police, of San Francisco, by whom petitioners were arrested.

Officer Lees, in his return to the writ of *habeas corpus*, claimed to hold the petitioners by virtue of the foregoing warrant, and also set forth the requisition and affidavit on which the same was issued.

*A. Campbell,* for Petitioners.

*J. W. Coffroth,* for the People.

The application for discharge was heard before Justice CROCKER, by whom the opinion was delivered.

In Matter of Romaine.

The parties in this case were arrested and held in custody under a warrant issued by the Governor of this State, upon a requisition made by the acting Governor of Idaho Territory, alleging that they were charged with the crime of murder and highway robbery, committed in Idaho Territory, and that they fled from that Territory to this State. They have obtained a writ of *habeas corpus* to determine the validity of their arrest and imprisonment.

The first question raised by the counsel for the applicants is, that Congress had no power to pass the act relating to the rendition of fugitives from justice; and if they have, it is confined, under the provision in the National Constitution, to fugitives escaping from one " State " to another " State," and does not extend to fugitives fleeing from a " Territory." The clause of the National Constitution thus brought in question is as follows: " A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." It will be noticed that Congress is not referred to in this clause, nor is any power over the matter conferred upon that body. In the same article in which it is found, several important subjects are treated of, over some of which power is conferred upon Congress, and in others not. Thus in regard to the public acts, records, and judicial proceedings of the States, the admission of new States, the disposal of the territory and other property of the United States, and the guaranty of a republican form of government to each State, full power over these subjects is directly conferred upon Congress; but as to all other matters in that article, including the clause in question, no power is conferred upon Congress. They stand as solemn compacts between the States, to be enforced by State legislation, or by judicial action. They are, to a great extent, a recognition of rights founded upon principles of international law, but which were, under that law, often deemed more a matter of comity, than of absolute right, except the provision respecting the rights of citizenship, which go beyond any rule of international law.

Upon this very subject of the surrender of fugitives from justice

fleeing from one State or nation to another, under the rules of international law, it has been a question very fully and ably discussed by public writers, whether such surrender was a matter of right and duty, or merely of comity. (Story on Conflict of Laws, Secs. 626–628.) This was deemed too important a question to leave unsettled, and the framers of our National Constitution wisely inserted the clause referred to, making it no longer a matter of mere comity, subject to the pleasure of each State, but an absolute right and duty. This provision being a part of the supreme law of the land, it is a part of the law of each State, and State officers whose duty it is to adjudicate or execute the laws, are governed by it the same as by every other law in force. A Court of general original jurisdiction, exercising the usual powers of a Common Law Court, is fully competent to hear and determine all matters, and to issue all necessary writs for the arrest and transfer of the fugitive criminal to the authorized agent of the State from whence he fled. Where a right is established by law, such Courts can apply the appropriate remedy and issue the necessary writs without special legislation. It may be considered doubtful whether the transfer of this power from the Courts to the Governor of the State is an act of wisdom. Certainly Courts of Justice are more competent to adjudicate the difficult and perplexing questions which often arise in such cases, than the Governor.

The great object of the National Constitution was to create a national government, with adequate powers ; and a secondary object was, by articles of solemn compact, to settle certain matters of right and duty between the States and between the citizens of the different States. In pursuance of its first and great purpose, it establishes a government, defines its sphere, prescribes its duties, and confers upon it certain powers. And in carrying out its secondary purpose, it contains certain articles of agreement between the States. These different ends of the Constitution are entirely distinct in their nature, and if all the articles of compact were stricken out, the government created by it would still exist. The clauses of compact confer no power upon the government, and the powers of the government cannot be exerted except by virtue of express provisions to enforce these matters of compact. The clause

in question is purely a matter of compact or agreement between the States, and it confers no powers upon Congress over its subject matter. The great object of rules of construction is to ascertain the intention of the parties making the instrument. The simple fact that while in several clauses in the same article power over the matters therein are directly, and in express terms, conferred upon Congress, while in the clause under consideration, such power is carefully withheld and omitted, would seem to be conclusive as to the intention of those who adopted the Constitution.

If this was a new question, free from the political excitements which have grown out of the discussion of the subject of slavery, and the enforcement of the succeeding clause relating to fugitives from service, few would have disputed that this clause confers no power upon Congress over the subject, and that all Congressional legislation founded thereon is void. In the view I have taken of this case, it is not necessary to determine this question. The clause, by its terms, applies only to criminals fleeing from one " State " to another " State," and does not in express terms apply to those fleeing from a Territory to a State, which is the case now under consideration. This case is not directly provided for by the National Constitution, and we are therefore compelled to look elsewhere for the power to return the parties before us.

The State has passed a law upon this subject which is in the following terms : "A person charged in any State or Territory of the United States with treason, felony, or other crime, who shall flee from justice, and be found in the State, shall, on demand of the executive authority of the State or Territory from which he fled, be delivered up by the Governor of this State, to be removed to the State having jurisdiction of the crime." Succeeding sections provide for the arrest and detention of the fugitive until he can be arrested under the warrant of the Governor. Under this section the Governor had a right to issue a warrant for the arrest of the parties in this case, and their surrender to the agent appointed by the acting Governor of Idaho Territory, and their removal from the State, upon a proper application being made to him therefor. The power to issue the warrant depends upon the following facts : 1st, that the persons are charged in some State or Territory of the

United States with treason, felony, or other crime; 2d, that they have fled from justice; 3d, that they are found in this State; and 4th, that the executive authority of the Territory from which they fled, had demanded their delivery, to be removed to the Territory having jurisdiction of the crime. Properly, these facts should be clearly stated in the warrant issued by the Governor, to show that it is issued in a case authorized by law. The warrant issued for the arrest and removal of these parties is defective in this respect, as it merely states that they are " charged with the crime of murder and highway robbery in the Territory of Idaho," and that a demand or requisition has been made upon the Governor of this State for their arrest and delivery, by the acting Governor of the Territory; but it omits to state that they have fled from justice or that they are found in this State. The return to the writ of *habeas corpus* of the officer who has them in custody sets forth, however, certified copies of the original affidavit, and the requisition of the acting Governor of Idaho Territory issued thereon, and upon which the warrant of the Governor of this State was issued. These papers supply these facts omitted in the warrant, and substantially show that the warrant was issued in a case within the provisions of the law of this State. The applicants for the writ have not attempted to controvert any of these facts, or to show any valid reason why the warrant should not be enforced against them.

For these reasons, their application to be discharged is denied, and they are ordered to be remanded to the custody of the officer having them in charge, to be removed from the State, in accordance with the warrant of the Governor.